AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Virginia



| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>information associated with two accounts stored at<br>Dropbox, Inc. | )<br>)<br>)<br>)  Case No. 4:25-sw-31<br>)<br>)<br>) |

**FILED**

APR 2 4 2025

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1001, 371, 1343 | False Statements, Conspiracy to Commit Offenses Against and Defraud the United States, and Wire Fraud |

The application is based on these facts:

See enclosed affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA/SAUSA

_____
Mack Coleman and Brian Samuels

_____
*Applicant's signature*

Rachel Williamsen, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date:     04/24/2025

City and state:  Norfolk, Virginia

*Lawrence R. Leonard*
*Judge's signature*

Lawrence R. Leonard, U.S. Magistrate Judge
*Printed name and title*



IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ACCOUNTS STORED AT DROPBOX, INC. | **UNDER SEAL**<br><br>Case No. 4:25-sw-31<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Rachel Williamsen, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with certain accounts stored at premises owned, maintained, controlled, or operated by Dropbox, Inc. ("Dropbox"), an electronic communications service and/or remote computing service provider headquartered at 1800 Owens St., Ste. 200, San Francisco CA 94158. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Dropbox to disclose to the Government copies of the information (including the content of records) for Dropbox accounts kliu@advaluephotonics.com ("**SUBJECT ACCOUNT 1**") and sales@advaluephotonics.com ("**SUBJECT ACCOUNT 2**), further described in Section I of Attachment B. These two accounts are collectively referred to as the "Target Accounts." Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation and have been since 2019. That is, I am an officer of the United States, who is empowered by law to conduct investigations regarding violations of United States law, to execute warrants issued under the authority of the United States, and to make arrests of those offenses, as enumerated in Title 18, United States Code, § 3052. Prior to my assignment as a Special Agent, I worked in analytical roles for the FBI from 2009 to 2019 focusing on a range of criminal and national security threats. As a Special Agent with the FBI, I am currently assigned to work counterintelligence. In the course of my duties, I am responsible for investigating crimes which include, but are not limited to, illegal technology transfer, mishandling of classified materials, espionage including economic espionage, money laundering, and fraud. Since joining the FBI, your affiant has received specialized training in criminal and national security investigations, identifying and seizing electronic evidence and recovery. Your affiant is familiar with the methods by which criminals conduct their business, including but not limited to, their use of cloud-based storage to save records digitally to prevent discovery from physical search methods.

3.    The facts and information contained in this Affidavit are based on my personal knowledge, as well as that of the other agents involved in this investigation. This Affidavit only contains information necessary to establish probable cause in support of an Application for a Search Warrant authorizing a search of information associated with the Target Accounts, described in Attachment A. This Affidavit is not intended to include each and every fact and matter observed by, or made known to, agents of the Government.

4.    Based on my training and experience, and the facts as set forth in this Affidavit, there is probable cause to believe Shibin JIANG ("JIANG") orchestrated a years-long scheme to defraud the Government, in violation of 18 U.S.C. §§ 1001 ("False Statements"), 371 ("Conspiracy to Commit Offenses Against the and Defraud the United States"), and 1343 ("Wire Fraud"). There is also probable cause to believe that evidence of these crimes; contraband; fruits of these crimes; and/or instrumentalities of these crimes further described in Attachment B currently exist in the Target Accounts. Specifically, there is probable cause to believe the Target Accounts were used to make false statements to the Government, contain evidence of activities JIANG intentionally and fraudulently concealed from the Government, and contain records related to the use of proceeds fraudulently obtained from the Government.

5.    In January 2025, the Government received digital content of emails stored at Newfold Digital, Inc., which was the email provider for JIANG's company. The records were received pursuant to a search warrant issued in the Eastern District of Virginia. The email content showed multiple occurrences of JIANG and representatives of his company using the Target Accounts engaged in fraudulent activity in furtherance of activities that JIANG allegedly concealed from the Government including shipments to sanctioned entities, existence of a joint venture based in the People's Republic of China, business arrangements with an enterprise owned by a foreign state, collaboration and joint ventures communicating with the Government to submit allegedly false certifications and documents related to Government procurements. The records also show the use of **SUBECT ACCOUNT 1** and **SUBJECT ACCOUNT 2** in accessing and sharing files with JIANG that were stored in Dropbox. The Government believes that due to the use of Dropbox to store company files pertinent and relevant to the execution of JIANG's business, records will be found stored in the Dropbox accounts directly related to JIANG's scheme to defraud the United States.

## JURISDICTION

6.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court for the Eastern District of Virginia is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7.    The United States, by and through the NASA OIG, Federal Bureau of Investigation ("FBI"), Homeland Security Investigations ("HSI"), and Air Force Office of Special Investigations ("OSI"), is investigating JIANG and his company, AdValue Photonics, Inc. ("AdValue

Photonics"), for allegedly orchestrating a years-long multifaceted scheme to defraud the Government through activates contrary to the national security and/or foreign policy interests of the United States. From 2011 to present, NASA and the Department of Defense ("DoD") awarded AdValue Photonics over seventy research projects and purchase orders for a total of approximately $22 million. The research related to lasers and directed energy systems. The DoD components that awarded procurements to AdValue Photonics were the Department of Air Force, Department of Navy, the Missile Defense Agency, and the Department of Army. Concurrent with those awards, JIANG owned and/or was affiliated with businesses and entities in the People's Republic of China ("PRC"). At least two of those entities were on the Department of Commerce "Entity List[1]," and additional entities were associated with the PRC's military industrial complex. There is probable cause to believe JIANG knowingly and repeatedly made false representations to the Government and concealed those PRC affiliations from NASA and DoD in order to apply for and receive Government funds. In furtherance of the scheme, JIANG conspired with individuals both known and unknown to the Government to submit false certifications to the Government. At least one technology developed under the Government research projects was illicitly transferred to one of JIANG's businesses in China, in contravention of representations that JIANG made to receive Government funds. The technology was subsequently assigned to another one of JIANG's Chinese companies.

8.      On August 27, 2024, September 10, 2024, and September 13, 2024, the investigative team obtained search warrants in the Eastern District of Virginia, Newport News Division, for eight total email accounts related to JIANG and his companies, as well as certain cellular telephone records associated with JIANG. The Court (Judges L. Leonard, and D. Miller) found probable cause that there would be evidence of a crime, contraband, fruits, or other items illegally possessed, and property designed for and used in committing a crime in those email accounts and phone records. Reviews of those records helped further establish the probable cause detailed in this affidavit.

<u>JIANG'S COMPANIES AND AFFILIATIONS</u>

9.      As detailed below, records obtained from search warrant productions disclosed JIANG founded, owned, and controlled three domestic companies and two companies located in China. The domestic companies were AdValue Photonics, Inc., AdValue Technology, LLC, and AZ Industrial Lasers located in Tucson, Arizona. The two Chinese companies were Suzhou Tusen

---

[1] The BIS publishes the names of certain foreign persons – including businesses, research institutions, government and private organizations, individuals, and other types of legal persons – that are subject to specific license requirements for the export, reexport and/or transfer (in-country) of specified items. These persons comprise the Entity List, which is found at Supplement No. 4 to Part 744 of the Export Administration Regulations ("EAR"). The persons on the Entity List are subject to individual licensing requirements and policies supplemental to those found elsewhere in the EAR. BIS first published the Entity List in February 1997 as part of its efforts to inform the public of entities that have engaged in activities that could result in an increased risk of the diversion of exported, reexported or transferred (in-country) items to weapons of mass destruction programs. Since its initial publication, grounds for inclusion on the Entity List have expanded to activities sanctioned by the Department of State and activities contrary to U.S. national security and/or foreign policy interests.

Laser Co., Ltd. ("Suzhou Tusen Laser") (aka Suzhou Tuscon Laser), located in Suzhou, China, and Hangzhou Yinhu Laser Technology Co., Ltd. ("Yinhu Laser")(aka Hangzhou Silver Lake Laser), located in Hangzhou, China.

10.    The search warrant records also disclosed JIANG had continuous and ongoing affiliations and employment with the Shanghai Institute of Optics and Mechanics ("SIOM") of the Chinese Academy of Sciences ("CAS"). The affiliations included but were not limited to funds and land provided by the Fuyang District Government of China to build a new industrial park wherein SIOM and Yinhu Laser would be located side-by-side within the complex. Since January 6, 2025, the Department of Commerce, Bureau of Industry and Security ("BIS"), listed SIOM on the "Entity List." SIOM was added to the Entity List with a group of six other Chinese entities. BIS stated:

> [t]hese entities are being added for acquiring and attempting to acquire U.S.-origin items in support of China's military modernization. In addition, these entities have demonstrable ties to activities of concern, including hypersonic weapons development, design and modeling of vehicles in hypersonic flight, using proprietary software to model weapons design and damage; and otherwise supporting China's military-civil fusion efforts.

11.    In or about 2007, JIANG established AdValue Photonics. Your affiant reviewed formation paperwork from the State of Arizona, which disclosed AdValue Photonics was registered with the Arizona Corporation Commission and incorporated on May 7, 2007. AdValue Photonics was a manufacturer of innovative fiber lasers for materials processing, scientific, LIDAR, medical, and military markets. From in or about 2007 to present, JIANG owned and operated AdValue Photonics.

12.    Email content received pursuant to a search warrant on Newfold Digital revealed an email sent January 3, 2020, from JIANG's personal email sj4655078@gmail.com to sjiang@advaluephotonics.com with an attached presentation highlighting the formation of JIANG's companies.

13.    A machine translation of the January 3, 2020, presentation disclosed JIANG was the sole founder of Suzhou Tusen Laser in 2011. Suzhou Tusen Laser a high-tech enterprise focused on Research and Development ("R&D"), production, and sales of high-end laser processing equipment. In addition, Suzhou Tusen Laser had a joint research and development center with China Academy of Science and undertook national 863 Program[2] key high-tech research projects for China.

---

[2] According to the Final Report of the Select Committee on U.S. National Security and Military/Commercial Concerns with the People's Republic of China, reported to Congress from the U.S.-China Economic and Security Review Commission, in 1986 the PRC implemented the National High-Tech Research and Development Program (aka "the 863 Program"). The 863 Program was initiated to accelerate the acquisition and development of science and technology in the PRC focused on strategic military programs.

-4-

14.    The January 3, 2020, machine translated presentation also disclosed JIANG established Yinhu Laser. JIANG was identified as a specially-appointed expert by the Chinese Communist Party Central Committee, "Thousand Talent Plan3." It stated the company was a high-tech research, production, and sales enterprise in advanced laser processing equipment, specializing in glass, crystal, and semiconductor precision laser processing. The R&D team of the company was mostly comprised of returned overseas scholars with U.S. doctoral degrees and owned 33 Chinese invention and utility model patents. It also stated Yinhu Laser owned Suzhou Tusen Laser.

15.    On June 20, 2021, Shibin Jiang utilized his personal Gmail account to email a Yinhu Laser presentation .pdf document to his AdValue Photonics account, sjiang@advaluephotonics.com. The date on the .pdf was November 12, 2020. On page 14 of the presentation, there was a biography for Shibin Jiang. A machine translation disclosed in part, "Founder of the company [Yinhu Laser] – Dr. Shibin Jiang," and, "...visiting researcher of the Shanghai Institute of Optics and Fine Mechanics [SIOM] of the Chinese Academy of Sciences and overseas member of the innovation team..."

16.    On page 18 of the presentation, there was a slide titled, "Hangzhou Yinhu Laser Industrial Park." The machine translation also disclosed:

Support from the Fuyang District Government of Hangzhou: Provide an industrialization R&D subsidy of 10 million yuan per year, a total of 30 million yuan. Provide 25 acres of land to build a 49,000 square meter R&D building, factory buildings and dormitories. The district government will pay the construction costs before moving in. Provide a subsidy of up to 26.5 million yuan for factory and equipment construction." The industrial park is 900 meters away from the high-speed railway station, 1,000 meters away from Tingshan Mountain, and 5,000 meters away from Fuchun River. **It is separated from the Shanghai Institute of Optics and Fine Mechanics Hangzhou Branch by a 20-meter-wide artificial river** (emphasis added). It will be completed in July 2022.

17.    The following is a copy of the page, which displays SIOM on the left, next to Yinhu Laser on the right:

---

3 The Thousand Talent Plan is a Chinese government initiative to attract top talent from other countries. China has multiple talent plans which incentivize its members to steal foreign technologies needed to advance China's national, military, and economic goals. Additional information can be found at https://www.fbi.gov/investigate/counterintelligence/the-china-threat/chinese-talent-plans.






18.    On June 5, 2023, JIANG utilized his AdValue Photonics, account sjiang@advaluephotonics.com, to email Xia Li and Lilijia Jiang, AdValue Photonics, a PowerPoint presentation.  A machine translation disclosed the PowerPoint was saved as, "Hangzhou Yinhu Laser-20230522."  Shibin Jiang wrote:

> Do not forward it to anyone without my permission.

19.    The presentation contained a slide which stated Jiang was, "a visiting researcher at the Shanghai Institute of Optics and Mechanics [SIOM] of the Chinese Academy of Sciences and the Xi'an Institute of Optics and Mechanics."  The following is a machine translation of the slide (emphasis added):



## Core Team | Founder

**Dr. Shibin Jiang**

1998 Co-founded NP Photonics Inc
2007 Founded AdValue Photonics Inc
2018 **Founded Hangzhou Yinhu Laser**



- Fellow of the World Academy of Ceramics
- Fellow of the American Ceramic Society, Fellow of the International Society of Optoelectronics, Fellow of the Optical Society of America
- Won the Gottardi Award of the International Glass Association (only one person is awarded each year in the world)
- Won the "R&D100 Award" twice (known as the Oscar Award in the American science and technology industry)
- In 2018, he received the American Ceramic Society Technical Achievement Award.
- In 2019, he was awarded the title of International Ceramic Ambassador.
- 2021 recipient of the Ceramic Technology Leadership Award.
- It has obtained 51 US invention patents and 33 Chinese patents;
- More than 150 academic papers, edited and published 27 collections, and made 35 invited academic reports at conferences
- Served as chairman of 45 international academic conferences and editorial board member of 4 international scientific journals
- Overseas review expert of the Chinese Academy of Sciences, former member of the National Natural Science Foundation Review Expert Committee
- Visiting professor at Zhejiang University and Nankai University, **visiting researcher at Shanghai Institute of Optics and Fine Mechanics** and Xi'an Institute of Optics and Fine Mechanics, Chinese Academy of Sciences
- Visiting Research Professor at the University of Arizona, Consultant for the Science and Technology Promotion Project at the University of Tokyo, Japan, Visiting Professor at Kobe University, Japan, and University of Rennes 1, France
- Chairman of the Glass and Optical Materials Committee of the American Ceramic Society (2014)
- Current Chairman of the Photoelectric Glass Committee of the International Glass Association; Current Director of the American Ceramic Society

### REQUIREMENTS OF JIANG'S SBIR AWARDS

20.    Based on a review of the Federal Procurement Data System ("FPDS") and Enhanced Procurement Data Warehouse ("EPDW"), from 2017 to 2024, NASA Langley Research Center ("LaRC"), Hampton, Virginia, and NASA Goddard Space Flight Center ("GSFC"), Greenbelt, Maryland, via the NASA Shared Services Center, awarded AdValue Photonics twelve Small Business Innovation Research ("SBIR") program contracts for approximately $5 million. The research related to fiber lasers, laser components, and directed energy systems. JIANG served as the Principal Investigator[4] for multiple awards and listed sjiang@advaluephotonics.com as his email for all the awards.

21.    Based on a review of the FPDS, from 2017 to 2023, the DoD awarded approximately $6.36 million in funds related to fiber lasers, laser components, and directed energy systems. JIANG served as Principal Investigator for multiple awards.

22.    The relevant NASA SBIR solicitations from 2017 to 2024 contained restrictions that prohibited NASA from contracting to participate, collaborate, or coordinate bilaterally in any way with China or a Chinese-owned company with funds appropriated on or after April 25, 2011. The restrictions stated in part:

> By submission of its offer, the applicant and offeror of a SBIR contract represented that the offeror is not China or a Chinese-owned company.

---

[4] By law, the Principal Investigator is the primary person responsible for the project and the underlying research and development.

23.     The NASA SBIR Solicitations for 2017 to 2024 contained requirements that Research/Research & Development (R/R&D) must be performed in the United States and proposals must clearly indicate if any work will be performed outside the United States.

24.     The NASA SBIR Solicitations from 2019 to 2024 prohibited purchases from or work with countries that appear on the list of Designated Countries, which included the PRC from at least 2019 to present.

25.     Lastly, the SBIR and STTR Extension Act of 2022 which was reauthorized through FY2025 modified the SBIR and Small Business Technology Transfer (STTR) program. The bill required agencies with a SBIR program to assess the security risks presented by offerors with financial ties or obligations to certain foreign countries. The programs may not make awards to businesses with certain connections to foreign entities. To comply with this requirement, the program required all offerors selected for contract negotiation of a 2023 SBIR Phase I award to complete additional disclosures regarding ties to the People's Republic of China and other foreign countries prior to award and as needed during the life of the funding agreement. These disclosures included:

A. The identity of all owners and covered individuals of the small business concern who are a party to any foreign talent recruitment program of any foreign country of concern, including the People's Republic of China;
B. The existence of any joint venture or subsidiary of the small business concern that is based in, funded by, or has a foreign affiliation with any foreign country of concern, including the People's Republic of China;
C. Any current or pending contractual or financial obligation or other agreement specific to a business arrangement, or joint venture-like arrangement with an enterprise owned by a foreign state or any foreign entity;
D. Whether the small business concern is wholly owned in the People's Republic of China or another foreign country of concern;
E. The percentage, if any, of venture capital or institutional investment by an entity that has a general partner or individual holding a leadership role in such entity who has a foreign affiliation with any foreign country of concern, including the People's Republic of China;
F. Any technology licensing or intellectual property sales to a foreign country of concern, including the People's Republic of China, during the 5-year period preceding submission of the proposal; and
G. Any foreign business entity, offshore entity, or entity outside the United States related to the small business concern.

## THE SCHEME AND ARTIFICE TO DEFRAUD

26.     NASA SBIR Solicitations for 2017 to 2024 contained restrictions against offerors making false statements. The requirements stated:

Knowingly and willfully making any false, fictitious, or fraudulent statements or representations may be a felony under the Federal Criminal False Statement Act (18 U.S.C., section 1001), punishable by a fine and imprisonment of up to 5 years

in prison. The Office of the Inspector General (OIG) has full access to all proposals submitted to NASA.

27.     NASA SBIR procurements contained clauses and provisions related to NASA's Restriction on Funding Activity with China, where R/R&D was performed, and disclosure requirements for related R/R&D and biographical information for essential personnel. Those restrictions and requirements prohibited JIANG and AdValue Photonics from receiving the NASA SBIR awards. Reviews of the complete files for NASA SBIR contracts NNX17CG02C, NNX17CG20P, 80NSSC18C0029, 80NSSC18P2008, 80NSSC19C0145, 80NSSC20C0428, 80NSSC20C0430, 80NSSC21C0458, 80NSSC21C0459, 80NSSC23PB295, 80NSSC23PB296, and 80NSSC24CA141, as well as NASA's email servers, showed JIANG submitted dozens of false certifications and repeatedly failed to disclose to NASA his above referenced foreign affiliations.

### Prohibitions Against Chinese-Owned Companies

28.     NASA SBIR solicitations from 2017 to 2024 contained restrictions that prohibited NASA from contracting to participate, collaborate, or coordinate bilaterally in any way with China or a Chinese-owned company with funds appropriated on or after April 25, 2011. **"By submission of its offer, the applicant and offeror of a SBIR contract represented that the offeror is not China or a Chinese-owned company."** (emphasis added)

29.     Multiple investigative techniques were used to reveal JIANG hid affiliations with businesses and entities in the PRC. Those techniques included a search warrant submitted to Newfold Digital for emails content of JIANG's email. Those emails outlined the creation and formation of JIANG's Chinese companies as detailed above.

30.     On September 15, 2019, JIANG sent an email from his personal Gmail account to sjiang@advaluephotonics.com. Attached to the email was a Word document. The machine translated document was titled, "Jiang Shibin Resume." The document disclosed in part JIANG's cooperative partnerships with the Chinese government's CAS through SIOM and Xi'an Institute of Optics and Mechanics:

> Dr. Jiang is currently an adjunct professor at the School of Optics at the University of United States and Arizona, the chairman of two high-tech companies in United States, the chairman of Suzhou Tucson Laser and Hangzhou Yinhu Laser, an overseas review expert of the Chinese Academy of Sciences, a visiting professor at Zhejiang University and Nankai University, and a visiting researcher at the Shanghai Institute of Optics and Mechanics [SIOM] of the Chinese Academy of Sciences and the Xi'an Institute of Optics and Mechanics. "Thousand Talents Program" of the Organization Department of the CPC Central Committee.

31.     On January 8, 2020, JIANG sent an email from his personal Gmail account to sjiang@advaluephotonics.com. Attached to the email was a PowerPoint dated January 3, 2020. A machine translation disclosed the PowerPoint was saved as, "Hangzhou Yinhu Laser Co., Ltd. Business Plan-MaxLu." The machine translation also disclosed that on the first slide of the

-9-

PowerPoint, Jiang was represented as "Chairman" of Yinhu Laser and listed some of his affiliations to include the "National Thousand Talents Program."

32. On page 39 of the PowerPoint labeled, "Development Planning" Yinhu Laser identifies AdValue Photonics as its "full-service partner." The page disclosed in part:

Hangzhou Yinhu Laser Co., Ltd. takes the relevant advanced technology and brand management strategy of the United States as its core, and cooperates with leading domestic companies in related industries to achieve brand management and product sales, striving to achieve sales revenue of more than 300 million yuan in 2024 and successfully go public in 2025... At the end of 2023, the company's board of directors may decide to merge with its full-service partner: AdValue Photonics in Tucson, USA.

33. On April 7, 2020, JIANG sent an email from his personal Gmail account to sjiang@advaluephotonics.com. Attached to the email was a .pdf document dated April 2, 2020. A machine translation disclosed the document was saved as, "Hangzhou Yinhu Jingwei Enterprise Management Co., Ltd." The document disclosed, "[t]his form is applicable to the establishment and change of legal representative." Jiang was listed as the "Executive Director." The document listed Jiang's passport number 642987561, telephone number 15858187001, and address Room 1317 . 13th Floor, Yinhu Street, Fuyang District, Hangzhou, Zhejiang Province. The document had a section marked, "(Stamped by Hangzhou Yinhu Laser Technology Co., Ltd. Jiang Shibin (Signature)). Under the section, "Decision on the Executive Director of Hangzhou Yinhu Jingwei Enterprise Management Co., Ltd. concurrently serving as Manager," the document stated, "1. The current executive director Jiang Shibin has been decided to concurrently serve as the current company manager."

## Place of Performance Requirements

34. The NASA SBIR Solicitations for 2017 to 2024 required that Research/Research & Development (R/R&D) must be performed in the United States and proposals must clearly indicate if any work will be performed outside the United States.

35. According to records produced by the Department of Homeland Security ("DHS"), in 2022, JIANG was overseas approximately 112 days. In 2023, JIANG was overseas approximately 262 days. During an interview with DHS on November 22, 2023, JIANG stated he traveled to China approximately one to two times per month to run Yinhu Laser. In 2024, JIANG was overseas approximately 284 days.

36. JIANG served as the Principal Investigator for multiple awards and listed sjiang@advaluephotonics.com as his email for all the awards. The Principal Investigator is the primary person responsible for the SBIR project and the underlying research and development.

37. Per NASA SBIR Solicitations for 2017 to 2024, NASA had the sole right to accept or reject a [Principal Investigator] based on factors such as education, experience, demonstrated ability and competence, and any other evidence related to the specific assignment.

38. For example, JIANG failed to accurately represent to NASA the place of performance for SBIR contract 80NSSC21C0459, titled "Thirty Millijoule Single Frequency 2 Micron Fiber Lasers for Coherent Wind Lidar."

39. On or about February 28, 2021, AdValue Photonics submitted a proposal to NASA in response to NASA's SBIR Fiscal Year 2021 General Solicitation. The solicitation led to the award of NASA SBIR contract 80NSSC21C0459. JIANG authored the proposal and was listed as the Principal Investigator.

40. Pursuant to the requirements of "Part 6" of the SBIR solicitation, JIANG provided biographical information for himself and other key personnel. Of note is the fact JIANG provided an extensive summary that detailed his education, publications, edited books, speaking engagements, U.S. patents, U.S. companies, and awards. However, JIANG deliberately omitted his ownership of Chinese businesses, collaboration with Chinese institutions, Chinese publications, or his Chinese patents.

41. Later in the proposal, there was a section dedicated to key management, technical personnel, and organizational structure. JIANG described his AdValue Photonics employees and detailed US companies that JIANG founded since 1998 until present. At no time did JIANG report his formation and management of Chinese companies, one of which had over double the number of employees as AdValue Photonics, or his affiliations with Chinese organizations, one of which was China's largest professional research institute for lasers.

42. As part of the solicitation process for what would become 80NSSC21C0459, AdValue Photonics was required to enter and certify information in the System for Award Management ("SAM"). On or about May 20, 2020, JIANG completed the SAM certification for AdValue Photonics. The certification was valid from May 20, 2020, to May 20, 2021. JIANG certified the place of performance for any contract resulting from the solicitation would be 2700 E. Bilby Road, Tucson, AZ 85706.

43. On May 17, 2021, NASA informed JIANG that AdValue Photonics was tentatively selected for an SBIR award. The award was contingent upon additional documentation and certifications for AdValue Photonics' application.

44. On June 28, 2021, JIANG used sjiang@advaluephotonics.com to submit to NASA a signed certification titled, "Confirmation of Negotiations." The certification was required to be completed before the contract was awarded to AdValue Photonics. When JIANG signed and submitted the Confirmation of Negotiations, JIANG certified information provided in the certification, the application, and all other information submitted in connection with the application was true and correct as of the date of submission. The certification contained language that warned JIANG that intentional or negligent misrepresentation of information was punishable civilly and criminally.

45.    In the certification, JIANG indicated the R/R&D would be performed in the United States.  JIANG also indicated the R/R&D would be performed at the address for AdValue Photonics, 2700 E. Bilby Road, Tucson, AZ 85706. The certification contained in part:

Confirmation of Negotiations

Any changes to the certification questions below or in the proposal shall be communicated to your Administrative Contracting Officer within 10 days of the change. ACN Initial *SY*

All small businesses that are selected for award of an SBIR/STTR Funding Agreement must complete this certification at the time of award and any other time set forth in the Funding Agreement that is prior to performance of work under this award. This includes checking all of the boxes and having an authorized officer of the Awardee sign and date the certification each time it is requested.

| # | Funding Agreement Certification | ACN Response | | |
|---|---|---|---|---|
| | | YES | NO | NA |
| 11 | During performance of award, the R/R&D will be performed in the United States unless a deviation is approved in writing by the Funding Agreement officer. □ If no, a waiver has been granted | ✓ | | |
| 12 | During performance of award, the R/R&D will be performed at the Awardee's facilities by the Awardee's employees, except as otherwise indicated in the SBIR/STTR application and approved in the Funding Agreement. List the address of the location(s)  2700 E. Bilby Road, Tucson, AZ 85706 | ✓ | | |

The SBIR Awardee has registered itself on SBA's database

| # | | YES | NO | NA |
|---|---|---|---|---|
| 17 | I understand that the information submitted may be given to Federal, State, and local agencies for determining violations of law and other purposes. | ✓ | | |
| 18 | I am an officer of the business concern authorized to represent it and sign this certification on its behalf. By signing this certification, I am representing on my own behalf, and on behalf of the business concern that the information provided in this certification, the application, and all other information submitted in connection with this application, is true and correct as of the date of submission. I acknowledge that any intentional or negligent misrepresentation of the information contained in this certification may result in criminal, civil or administrative sanctions, including but not limited to: (1) fines, restitution and/or imprisonment under 18 U.S.C. 1001; (2) treble damages and civil penalties under the False Claims Act (31 U.S.C. 3729 et seq.); (3) double damages and civil penalties under the Program Fraud Civil Remedies Act (31 U.S.C. 3801 et seq.); (4) civil recovery of award funds, (5) suspension and/or debarment from all Federal procurement and nonprocurement transactions (FAR subpart 9.4 or 2 CFR part 180); and (6) other administrative penalties including termination of SBIR/STTR awards. | ✓ | | |

Confirmation of Negotiations

| Signature | *[signature]* | Date *04/24/2021* |
|---|---|---|
| Print Name (First, Middle, Last) | Shibin Jiang | |
| Title | President | |
| Business Name | AdValue Photonics Inc. | |

To be completed by the negotiating Contracting Officer (CO):

CO Signature:  *[signature]*  Digitally signed by Michael Mayfield  Date: 2021.07.07 07:42:17 -05'00'

Negotiations are hereby closed on date of CO Signature Electronic Signature above

46.     On July 7, 2021, NASA awarded SBIR contract 80NSSC21C0459 to AdValue Photonics for $748,695. The terms and conditions of the contract required an "Interim Life Cycle Certification," and a "Final Life Cycle Certification." The certifications were required to continue to receive funds under the contract.

47.     On July 11, 2022, JIANG signed and submitted to NASA the Interim Life Cycle Certification. The Interim Life Cycle Certification contained the language that warned JIANG that intentional or negligent misrepresentation of information was punishable civilly and criminally. When JIANG signed and submitted the Interim Life Cycle Certification, JIANG again certified information provided in the certification, the application, and all of other information submitted in connection with the application for 80NSSC21C0459 was true and correct as of the date of submission.

48.     The Interim Life Cycle Certification asked, "[t]he R/R&D will be performed in the United States unless a deviation is approved in writing by the Funding Agreement officer," and "[t]he R/R&D will be performed at the Awardee's facilities by the Awardee's employees, except as otherwise indicated in the SBIR/STTR application and approved in the Funding Agreement." In response to both questions, JIANG marked, "Yes."

49.     From on or about August 19, 2022, to November 24, 2022; February 5, 2023, to April 18, 2023; and June 10, 2023, to August 5, 2023, border records obtained from HSI disclosed JIANG was overseas.

50.     On April 5, 2023, July 11, 2023, July 14, 2023, and July 19, 2023, JIANG used sjiang@advaluephotonics.com to send emails to NASA. Based on a review by the NASA OIG Cyber Crimes Division, the Internet Protocol addresses for the emails indicated JIANG was likely in or around Shanghai, China when he sent the first email and Hangzhou, China when he sent the remaining emails.

51.     Despite JIANG's repeated certifications which stated R/R&D would be performed in the United States, on October 5, 2022, April 10, 2023, and July 17, 2023, while JIANG was overseas, JIANG utilized NASA's Electronic Handbook to submit deliverables to NASA for SBIR contract 80NSSC21C0459. The deliverables consisted of demonstration reports and invoice certifications. The deliverables, and the mere act of submitting those deliverables, were considered R/R&D under the terms of the contract and per JIANG's certifications should have been performed and completed while JIANG was in the United States, not while he was overseas. The deliverables were required in order to continue to receive contract funds. The following is an example of one of the submissions as prepared by JIANG:

SBIR II Contract: 80NSSC21C0459                    AdValue Photonics Inc
Thirty Millijoule Single Frequency 2 Micron Fiber Lasers for Coherent Wind Lidar



An SBA 8(a) Certified Business

## Electronic Handbooks (EHBs)

NASA Phase II Progress Report

**PREPARED BY:**
Dr. Shibin Jiang
AdValue Photonics, Inc
2700 Bilby Rd., Suite 150
Tucson, AZ 85706
PHONE: (520) 790-5468
FAX: (520) 790-1158
Email: sjiang@advaluephotonics.com
Home Page: http://www.advaluephotonics.com

Contract Number: 80NSSC21C0459
Report Number: Quarterly Report (7)
April 10, 2023

52.     Although border records and Internet Protocol addresses for JIANG's emails showed JIANG was outside the United States when he submitted the deliverables, the Internet Protocol addresses for the submissions to NASA's Electronic Handbook all came back to Arizona. There is probable cause to believe at least some of JIANG's contributions to the project were done while JIANG was in China, in violation of the place of performance terms and conditions of the SBIR contract. As the Principal Investigator, JIANG was required to contribute to the project. In the event JIANG's employees completed JIANG's contributions domestically, that still would have violated the terms of the award because that was not what was proposed or disclosed to NASA. There are separate certifications and disclosures specifically related to the Principal Investigator's suitability and performance of NASA SBIR contracts.

53.     Email content received pursuant to a search warrant on Newfold Digital revealed that on September 5, 2023, JIANG utilized email account sjiang@advaluephotonics.com to send a Yinhu Laser PowerPoint to sjiang@advaluephotonics.com. A machine translation disclosed the title of the PowerPoint was, "Laser Micromachining of Brittle Materials. Dr. Shibin Jiang"

54.     On slide 11 of the Yinhu Laser PowerPoint it stated, "[w]e delivered 2.3mJ, 30ns laser to NASA Goddard Flight Center in 2019." A review of NASA records disclosed AdValue Photonics (not Yinhu Laser) delivered a 2.3mJ, 30ns laser to NASA Goddard Space Flight Center in 2019, as a deliverable for NASA SBIR contract NNX17CG02C.

55.     On slide 12 of the Yinhu Laser PowerPoint it stated, "[w]e delivered 2mJ laser to NASA Goddard Space Flight Center in 2022." The header for slide 11 machine translated to, "Single Frequency High energy 1572nm Fiber Laser." A cursory review of NASA records disclosed AdValue Photonics (not Yinhu Laser), "developed a deliverable pulsed single frequency fiber laser system at 1572nm with high pulse energy" for NASA SBIR contract 80NSSC18C0029. Slide 11 also notes the publication "1.8 mJ, 3.5 kW single-frequency optical pulses at 1572 nm

-14-

generated from an all-fiber MOPA system." This research publication was also related to NASA SBIR contract NNX17CG20P, the first phase of NASA SBIR contract 80NSSC18C0029. The following are the cover slide and slides 11 and 12 of the PowerPoint:







单频高能量308nm激光器


YINHU

308nm UV:
Pulse width: 3.6ns
Pulse repetition rate: 100.8kHz
Pulse energy: 34.7μJ

*Lei Pan, Jihong Geng, Thomas F Hanisco, and Shibin Jiang, "Single frequency tunable UV laser at 308 nm based on allfiberized master oscillator power amplifiers," Opt. Lett. 47, 58455848 (2022)*

**We delivered the laser to NASA Goddard Space Flight Center in 2022**

56.     On December 8, 2023, JIANG signed and submitted to NASA the Final Life Cycle Certification. The Final Life Cycle Certification contained the language that warned JIANG that intentional or negligent misrepresentation of information was punishable civilly and criminally. When JIANG signed and submitted the Final Life Cycle Certification, JIANG again certified information provided in the certification, the application, and all of other information submitted in connection with the application for 80NSSC21C0459 was true and correct as of the date of submission.

57.     The Final Life Cycle Certification asked, "[t]he R/R&D will be performed in the United States unless a deviation is approved in writing by the Funding Agreement officer," and "[t]he R/R&D will be performed at the Awardee's facilities by the Awardee's employees, except as otherwise indicated in the SBIR/STTR application and approved in the Funding Agreement." In response to both questions, JIANG marked, "Yes."

58.     Records show a similar pattern for NASA SBIR contract 80NSSC21C0458, titled "100s of kW peak power fiber amplifier for next-generation LiDAR application." JIANG was overseas when he submitted the "Final Report," "Final New Technology Summary Report," "Final life Cycle Certification," "Final Summary Chart," New Technology Summary Report Certification," and multiple Quarterly Demonstration Reports for NASA SBIR contract 80NSSC21C0458.

59.     The Principal Investigator for NASA SBIR contract 80NSSC21C0458 was Jihong Geng ("Geng"). Chief Scientist, AdValue Photonics. Geng prepared multiple deliverables for NASA SBIR contract 80NSSC21C0458. Records show JIANG then submitted those deliverables to NASA while JIANG was overseas.

60.     For NASA SBIR contract 80NSSC21C0458, JIANG submitted a Confirmation of Negotiations certification, SAM certification, Interim Life Cycle Certification, and Final Life Cycle Certification reflecting that research for the SBIR would be done in the United States and that the application materials were accurate.   However, as with NASA SBIR contract 80NSSC21C0459, JIANG did not disclose his PRC affiliations during the solicitation, award, or performance of NASA SBIR contract 80NSSC21C0458, nor did he disclose that R/R&D would be performed outside the United States.

61.     In addition to NASA SBIR contracts 80NSSC21C0458 and 80NSSC21C0459, this pattern of undisclosed PRC affiliations was repeated for NASA SBIR contracts NNX17CG02C, NNX17CG20P,  80NSSC18C0029,  80NSSC18P2008,  80NSSC19C0145,  80NSSC20C0428, 80NSSC20C0430, 80NSSC23PB295, 80NSSC23PB296, and 80NSSC24CA141.

### JIANG's knowledge of Place of Performance Restrictions

62.     Email content received pursuant to a search warrant on Newfold Digital revealed an email exchange involving JIANG which demonstrated his express understanding of place of performance restrictions for SBIR. On July 20, 2021, AdValue Photonics employee Lei Pan ("Pan") wrote JIANG and Geng regarding a Quarterly Demonstration Report #8 of NASA SBIR contract 80NSSC19C0145. In the email exchange, Pan requests JIANG and Jihong to review the quarterly report. JIANG responds the same day requesting Pan to add to the previous report and then convert before JIANG uploaded it. JIANG also stated, "[s]ince it is a trip to China, I don't bring any SBIR report files with me. I can't do any work" (emphasis added). However, as previously demonstrated, JIANG had multiple submissions to NASA while JIANG was overseas. It should be noted that those examples of overseas submissions to NASA occurred after July 20, 2021, the date JIANG disclosed his knowledge of the restriction in the above email.

63.     In addition to JIANG's statement that he cannot do work while in China despite his actions showing the contrary, JIANG also indicated his awareness of place of performance requirements in an email exchange with Kelsey Cook, AdValue Photonics' Finance Manager. Email content received pursuant to a search warrant on Newfold Digital revealed an exchange between Kelsey Cook and JIANG in April 2024 in which Kelsey notified JIANG that the Defense Contract Audit Agency (DCAA) was conducting an audit. The audit was required to obtain and maintained receipt of Government funds. JIANG specifically tells Cook that he would not attend the video meeting and stated, "Please tell them I am traveling and don't need to mention where I am traveling." (emphasis added) A review of the internet protocol address used by JIANG to send the email, 117.147.40.189 indicated the email was sent from Hangzhou, China. DHS records show that JIANG was not in the US the entire month of April.

64.     In July 2024, JIANG emailed the DCAA auditor responses to an audit questionnaire.   The first question questioned if JIANG had any knowledge of fraud or noncompliance with laws and regulations. JIANG responded, "no." Per DHS records, JIANG was not in the US when he responded to the DCAA auditor's questions. The following is the email with JIANG's response to question 1:

From         sjiang <sjiang@advaluephotonics.com>
To           Mendieta, William M CIV DCAA WE (USA) <william.m.mendieta.civ@mail.mil>
Sent         July 19, 2024 8:54:11 PM EDT
Received

Dear Mr. Mendieta,

Please see my answers in the following email.

Best Regards,

Shibin

On 07/19/2024  5:02 PM EDT Mendieta, William M CIV DCAA WE (USA) <william.m.mendieta.civ@mail.mil> wrote:

Hello Mr. Shibin Jiang.

Please answer the questions below:

1. Do you have any knowledge of any actual, suspected, or alleged fraud or noncompliance with laws and regulations affecting the period of time corresponding to the subject matter under audit.

Shibin Jiang: No.


## Requirement to Assess Security Risks

65.    The SBIR and STTR Extension Act of 2022 required agencies with a SBIR program to assess the security risks presented by offerors with financial ties or obligations to certain foreign countries, including the PRC, and prevents awards to businesses with certain connections to foreign entities. The program required offerors to complete additional disclosures regarding ties to the PRC which includes requirements to identify owners who were part of foreign talent programs, existence of subsidiaries or joint ventures based in the PRC, existence of a small business wholly owned in the PRC, and any technology licensing or intellectual property sales to the PRC within 5 years of the proposal submission.

66.    According to search warrant content, as well as an interview DHS conducted of JIANG on September 26, 2023, detailed below, from 2012 to at least September 26, 2023, JIANG was a member of the PRC's Thousand Talents Plan. JIANG stated he joined the plan because it provided certain benefits like funding and incentives for companies and individuals.

67.    According to a research paper titled, "Mid-Infrared Dynamic Wavefront Transformer Based on a Two-Degrees-of Freedom Control System," published by Laser & Photonics Reviews[5] on July 21, 2022, and another research paper titled, "Metasurface Micro/Nano-Optical Sensors: Principles and Applications," published by the American Chemical

---

5 Laser & Photonics Reviews was an interdisciplinary journal at the interface of photonics and optics, publishing Reviews, original Research Articles, and Perspectives covering recent breakthrough research to specific developments and novel applications, both theoretical and experimental.

-18-

Society ("ACS")[6] on August 12, 2022, JIANG was affiliated with the School of Optoelectronic Science and Engineering, University of Electronic Science and Technology of China. Your affiant reviewed portions of these publications, and they are publicly available at onlinelibrary.wiley.com/doi/10.1002/lpor.202200152 and https://pubmed.ncbi.nlm.nih.gov/35960685/, respectively. Since 2012, the University of Electronic Science and Technology of China was on the Department of Commerce ("DOC") "Entity List."

68.    As detailed from search warrant content, JIANG was affiliated with the Shanghai Institute of Optics and Mechanics ("SIOM") of the Chinese Academy of Sciences ("CAS") and the Xi'an Institute of Optics and Mechanics. Both institutes are associated with the PRC's military industrial complex.

69.    An open source, machine translated article published January 22, 2018, on the Xi'an Institute of Optics and Precision Mechanics of the CAS Chinese website, announced the creation of the Military-Civilian Integration Innovation Research Institute. The integration "aims to create a military-civilian integration of "hard technology" entrepreneurial ecosystem by opening up key industrial nodes." The integration focuses on developing core technologies and supplementing supply chain while adding "to the construction of national defense science and technology and new weapons and equipment."

70.    JIANG knowingly and repeatedly concealed from NASA and DoD his affiliations with Suzhou Tusen Laser, Yinhu Laser, the University of Electronic Science and Technology of China, SIOM, Xi'an Institute of Optics and Precision Mechanics, and his affiliation with PRC Talent Programs, when JIANG applied for and received Government funds. In furtherance of the scheme, JIANG submitted certifications to NASA which stated research was performed in the United States, while evidence shows some of the research was performed in China.

71.    The Government has recently taken additional steps to further stem the type of conduct JIANG is alleged to have committed. On January 14, 2021, National Security Presidential Memorandum (NSPM-33) was issued to, "strengthen protections of United States Government-supported R&D against foreign government interference and exploitation" while "maintaining an open environment to foster research discoveries and innovation that benefit our nation and the world." On August 10, 2021, OSTP committed to developing clear and effective implementation guidance for NSPM-33, and tasked the National Science and Technology Council to lead that process. Those efforts led to the SBIR and STTR Extension Act of 2022 (https://www.congress.gov/bill/117th-congress/senate-bill/4900/text). The bill required agencies with an SBIR or Small Business Technology Transfer (STTR) program to assess the security risks presented by offerors with financial ties or obligations to certain foreign countries. The programs may not make awards to businesses with certain connections to foreign entities. The SBIR and STTR Extension Act of 2022 required NASA, in coordination with the Small Business Administration, to establish and implement a due diligence program to assess security risks

---

[6] The American Chemical Society (ACS) was a non-profit founded in 1876 and chartered by the U.S. Congress. The ACS is one of the world's largest scientific organizations, with a mission to advance the broader chemistry enterprise and its practitioners for the benefit of Earth and all its people.

-19-

presented by offerors seeking a Federally funded award. As a result, NASA required offerors to fill-out and certify a "Disclosure of Foreign Affiliations" form.

72.    In February 2024, JIANG signed and submitted to NASA certifications and a proposal in response to NASA's FY23 SBIR Phase II Solicitation. JIANG marked that he had been part of a malign foreign talent recruitment program and wrote, "Shibin Jiang is the one of the owners of this company and he was on the foreign talent program from 2012 to 2015." This statement is contrary to the evidence found in records obtained from the Newfold Digital search warrant returns and JIANG's interview statements. JIANG admitted in an interview with DHS that he was part of the Thousand Talent Program until at least 2023.

73.    The Disclosure of Foreign Affiliations form also asked, "[d]oes the applicant or awardee have any current or pending contractual or financial obligation or other agreement specific to a business arrangement, or joint venture-like arrangement with an enterprise owned by a foreign state or any foreign entity?" JIANG marked, "No." As detailed in this affidavit, there is probable cause to believe JIANG's response was false because he had current and pending financial obligations as well as business arrangements with his companies in China.

74.    The Disclosure of Foreign Affiliations form asked, "[i]s there any foreign business entity, offshore entity, or entity outside the United States related to the applicant or awardee?" JIANG marked, "No." As detailed in this affidavit, there is probable cause to believe JIANG's response was false because both Yinhu Laser and Tusen Laser were related to AdValue Photonics. Yinhu Laser was a "sister" company to AdValue Photonics, and both Yinhu Laser and Tusen Laser shared employees and direction from JIANG.

75.    The Disclosure of Foreign Affiliations form asked, "[d]oes the applicant or awardee have an owner, officer, or covered individual that has a foreign affiliation with a research institution located in a foreign country of concern?" JIANG marked, "No." As detailed in this affidavit, there is probable cause to believe JIANG's response was false because JIANG was affiliated with SIOM and the University of Electronic Science and Technology of China, both of which are on the Entity List due to their close affiliations with the PRC military.

76.    On June 14, 2024, Qing Wang ("WANG"), President, AdValue Photonics, signed and submitted a Confirmation of Negotiations certificate which contained language that warned WANG intentional or negligent misrepresentation of information in the application was punishable civilly and criminally. When WANG signed and submitted the Confirmation of Negotiations, WANG certified information provided in the certification, the application, and all of other information submitted in connection with the application was true and correct as of the date of submission. There is probable cause to believe this certificate was false because the application and all other information submitted in connection with the application (ie. the Disclosure of Foreign Affiliations form, among other things) was false.

77.    JIANG's false statements in the Disclosure of Foreign Affiliations form, and the false statements in WANG's Confirmation of Negotiations certificate, ensured AdValue was not eliminated from potential award, in contravention of the Government's recent additional efforts to stop R&D awards against foreign government interference and exploitation. On June 24, 2024,

NASA awarded AdValue Photonics SBIR contract 80NSSC24CA141 for $848,553, with a period of performance from June 24, 2024, to June 23, 2026.

<u>TRANSFER OF INTELLECTUAL PROPERTY</u>

78.    There is also evidence that on at least one occasion, JIANG submitted a false certification to NASA in furtherance of an illicit scheme to transfer Intellectual Property, derived from NASA SBIR contracts, to JIANG's businesses in China.

79.    In 2009, NASA awarded two SBIR contracts, NNX09CF21P and NNX10CB41C, to AdValue Photonics for a total of approximately $699,219. The project title for the contracts was, "Q-Switched High Power Single Frequency 2 Micron Fiber Laser." The period of performance for the last contract was from December 15, 2009, to December 14, 2011.

80.    On February 28, 2012, JIANG submitted the Final Report to NASA for contract NNX10CB41C. JIANG wrote in part:

> **In this SBIR program we developed innovative Q-switched high power 2.05micron fiber laser with high pulse energy and high peak power** using our proprietary innovative highly efficient Tm/Ho-doped glass fiber. This new fiber laser is an all-fiber laser system consisting of actively Q-switched fiber laser oscillator and fiber amplifiers... **The Q-switched single frequency 2.05 micron developed under this SBIR support is commercially available now.** (emphasis added)

81.    Also on February 28, 2012, JIANG signed a Final Patent/NASA New Technology Summary Report certificate. The certificate asked, "[h]ave any New Technology Items resulted from work performed under this Funding Agreement during this reporting period?" JIANG marked, "No."

82.    On June 26, 2013, the NASA Administrative Contracting Officer ("ACO") for contract NNX10CB41C emailed JIANG at sjiang@advaluephotonics.com and wrote, "[t]he deliverable titled "Final Patent/New Technology Report" has to be submitted to eNTRe then uploaded to the EHB to satisfy the contract terms and conditions requirement. Please note the contract cannot be Closed-Out until this requirement is satisfied." JIANG replied, using sjiang@advaluephotonics.com, and stated, "[t]hanks for your e-mail. It need be submitted through website https://invention.nasa.gov/index.php although **we don't have any patent generated from this contract, right?**" (emphasis added) The ACO replied, "[y]es, you will be asked if new technology was developed...then when you're done print the report and upload to the EHB to satisfy the requirement."

83.    On March 15, 2012, sixteen days after submitting the Final Report to NASA for the 2 Micron Q-Switched Fiber Laser, Suzhou Tusen Laser submitted a patent application in China for CN203031123U titled, "Laser processing system using 2 micron q-switched pulse high-power fiber laser." JIANG was listed as the only inventor on the patent. As of at least April 17, 2024, the assignee for the patent was Yinhu Laser.

84.    In furtherance of the Government's investigation, a NASA Intellectual Property Attorney reviewed the technology represented in the NNX10CB41C Final Report and compared it to Chinese patent CN203031123U. The NASA Intellectual Property Attorney enlisted a NASA subject matter expert (SME) in optical instrumentation systems for the review. After review, both the NASA Intellectual Property Attorney and SME concluded the technology described in the Final Report was identical to the technology covered by the Chinese patent. There was only one slight modification where a mechanical piezo switch was used in the breadboard testing apparatus of the Final Report. The piezo switch was an inexpensive and well-known testing component. The piezo switch was replaced with an electro-optic switch in the Chinese patent, as would be expected for a commercial application. Otherwise, the technologies were the same.

85.    Coordination with the United States Patent and Trademark Office ("USPTO") confirmed no Foreign Filing License ("FFL") was sought or obtained to file CN203031123U.

## JIANG'S INTERVIEW STATEMENTS

86.    The following are summaries of statements JIANG provided to officials of DHS while JIANG entered the United States from China. They are not intended to be verbatim accounts of those statements and do not memorialize all the information provided therein.

87.    On September 26, 2023, JIANG was referred to secondary inspection when he arrived at San Francisco International Airport from Shanghai, China. Based on a report from HSI, JIANG was interviewed. The following is a summary:

88.    On September 26th, 2023, US citizen JIANG, Shibin (DOB: 11/12/1965) arrived at San Francisco International Airport on board UA 838 from Narita via Shanghai. JIANG stated he was returning from a one and a half month business trip to Shanghai.

89.    He stated he owns three companies in the US and one company in China. He stated he is the owner of AdValue Photonics, AdValue Technology, and Arizona Industrial Lasers that are all based in Tuscon. He stated he is the CEO and temporary general manager of Serverlake laser Technology inc [sic]. He stated AdValue photonics focuses on photonic electronics, his second business focuses on selling ceramic parts, and his third companies does laser marking systems. He stated his Chinese company builds laser materials processing machines.

90.    JIANG stated his company AdValue Photonics, does have various contracts with the US government. He stated he has had contracts with NASA, the DOD, and the DOE. He stated he develops some prototypes for range and $CO_2$ detecting lasers for NASA, he builds laser components for the DOD, and does report collecting for the DOE. JIANG stated he has never held any type of security clearance in the US or in China. He stated he is extremely cautious with the contracts his company accepts. He stated he is extremely careful with sensitive information relating to his company because he wants to keep a competitive edge over his competition. He stated he tries to not deal with any classified information because he doesn't want to risk his company over the issues between US and Chinese relations. He stated he tries to conduct business this way to keep his hands clean and out of trouble. He stated he has refused and declined many jobs offers and projects from the DOD and customers in China because of this. He stated he doesn't

-22-

want his company to go into the aerospace application space and instead focuses on industrial applications. He stated all the research he has conducted and gathered from projects are available to the public because he doesn't deal with classified information.

91.     JIANG stated he was a part of the thousand talent plan in China. He stated he applied with his old company, Tuscon Lasers [sic]. He stated he joined because it provides certain benefits like funding and incentives for companies and individuals. He was very adamant that he has never conducted any work or research on behalf of the Chinese government and military. He stated he has never transferred or shared any proprietary information. He stated one of his friends suggested that he join the program so the government doesn't make it hard for his company. He stated since he is a USC, certain Chinese officials could tax more or try to take it [sic] advantage of him but if he joins the program, they wont bother him and his company. JIANG stated that he merged Tuscon Lasers and Serverlake [sic] and moved the company to a different province in China, and because of this his company is no longer apart [sic] of the plan. He stated he is not planning on reapplying for it because there is an age limit to join which he no longer meets. He described joining the thousand talent program as a pyramid scheme where the people who refer get bonuses and praise for adding people. He stated that they try to add as many people as possible even if they don't do work or contribute because they get bonuses from it. He stated he has was not referred by a member and has not referred anyone to join the thousand talent plan.

92.     JIANG stated he was returning to Shanghai on October 8th because he still needs to find a permanent general manager for his company. He stated he is planning on coming back in a few months for the holidays.

93.     On November 22, 2023, JIANG was referred to secondary inspection when he arrived at San Francisco International Airport from Shanghai, China. Based on a report from HSI, JIANG was interviewed. The following is a summary:

94.     On this trip, JIANG stated he traveled to China for six weeks on business and visiting family. JIANG stated he traveled to Hangzhou (4 weeks), Shenzhen (1 week), and Shanghai (1 week). JIANG stated he travels at least 1-2 times a month, approximately ten (10) or more times a year. JIANG stated that most of his travel is for his business. JIANG stated he is self-employed and has several companies in both U.S (two) and China (one). JIANG stated his U.S. companies are Ad Value Technology (since 2003, with six employees), Ad Value Photonics (since 2007, with 30 employees). JIANG also stated his Chinese company is called Hangzhou Silverlake Laser (since 2018, has 70 employees). JIANG also had a business card in his possession for YINHU the laser; The 2(mu) [sic] micron, Fiber Laser Experts; (QSwitched, Mode-Locked, CW, Single Frequency, Amplifiers, Broadband Sources). JIANG stated the Ad Value Technology does ceramics, not manufacturing, only running the companies and Ad Value Photonics focuses on optics and selling the machines that get manufactured in China. JIANG stated his Chinese company makes the machines, glass machines like polymers, ceramics for lab purposes in university applications. JIANG expressed the reason he travels to China often is because he is running his Chinese business as well. JIANG stated he has many employees that depend on him for employment and if he had not opened the business in China, he was going to have to close one of the companies in the U.S. because it was not doing well, and he was almost going to go under. JIANG stated he is working hard to keep the companies to keep his employees working. A full

baggage exam was conducted on all available checked-in and carry-on bags. JIANG was carrying some storage devices, 3 flash drives, which he stated had personal and work information with no research information. JIANG was in possession of a visitor pass for the CPCA Show 2023 International Electronics Circuit Exhibition in Shanghai during Mar 22-24, 2023, and November 14-16, 2023 with some exhibition materials he received from several vendors in attendance. JIANG stated he often visits the exhibitions to get potential clients and customers. JIANG also attends the 15th Pacific Rim Conference of Ceramic Societies (PACRIM15) and the 13th International Conference on High-performance Ceramics (CiCC-13).

95.     Based on evidence gathered to date, it appears JIANG disclosed different and contradictory information to different audiences. For example, when JIANG spoke with officials from DHS, JIANG stated the reason he repeatedly traveled to China was because he owned a company in China, but JIANG denied he wanted his company to go into aerospace applications in space. When JIANG interacted with NASA, JIANG failed to disclose his companies in China, but readily disclosed his intent to develop technology for aerospace applications in space. When JIANG spoke with officials from DHS, JIANG disclosed AdValue Photonics had 30 employees and Yinhu Laser had 70 employees. When JIANG submitted AdValue Photonics documents to NASA for SBIR procurements, JIANG certified that the number of employees, including the employees of its affiliates, was 30. When JIANG spoke with officials from DHS, JIANG stated he had never worked or conducted research on behalf of the Chinese government or military. However, in search warrant content showed cooperative agreements between JIANG and his company Yinhu Laser and their cooperative partnership with the Chinese government's CAS through SIOM and Xi'an Institute of Optics and Mechanics. Finally, when JIANG spoke with officials from DHS, JIANG stated he did not have any ties with any Chinese professors or universities. As detailed above, JIANG did have ties to Chinese professors and universities, to include a Chinese university on the Entity List.

## USE OF THE TARGET ACCOUNTS

96.     A search warrant was issued in the Eastern District of Virginia on August 27, 2024 on Newfold Digital for seven emails: kliu@advaluephotonics.com ("**SUBJECT ACCOUNT 1**"), sales@advaluephotonics.com ("**SUBJECT ACCOUNT 2**"), sjiang@advaluephotonics.com, ljiang@advaluephotonics.com , xiali@advaluephotonics.com, contact@advaluephotonics.com, and yu.jiang@advaluetech.com. (Judge Lawrence R. Leonard).

97.     On January 15, 2025, Newfold Digital responded to the search warrant and provided content of the emails. Newfold Digital's production contained multiple records of **SUBJECT ACCOUNT 1 and SUBJECT ACCOUNT 2** receiving emails from Dropbox.

98.     On May 14, 2021, ljiang@advaluephotonics.com sent an email to sjiang@advaluephotonics.com with **SUBJECT ACCOUNT 1** and eeveritt@advaluephotonics.com cc'd. The email shared a Dropbox link with JIANG which contained videos for laser glass drilling specifically asking JIANG to review. This email indicates that JIANG uses the Dropbox accounts to review company materials. Following is an example of the email sent to JIANG with a Dropbox link:

| | |
|---|---|
| **From:** | ljiang@advaluephotonics.com |
| **Sent:** | 5/14/2021 12.07 13 000 PM |
| **To:** | Shibin Jiang < sjiang@advaluephotonics.com > |
| **CC:** | chu@advaluephotonics.com, eeveritt@advaluephotonics.com |
| **Subject:** | Laser glass drilling cutting videos - Sale group |
| **Importance:** | Normal |
| **Attachments:** | image001.png |

Hi Shibin,
Here is the videos we current have for laser glass drilling.
Please feel free to review it and comment.
https://www.dropbox.com/sh/frt23hrgvu2lrya/AADkZhSXvU9nsmlbBjtlbV64a?dl=0
Best regards,
Leo Jiang. Ph. D.,
Sr. Applications Engineer
AdValue Photonics Inc.,
2700 E. Bilby Road,
Tucson, Arizona,
85706, United States
Tel: 1-520-790-5468
Fax:1- 520-790-1158
Web: www.advaluephotonics.com
⚮ AdValue Photonics

99.    On April 7, 2021, Leo Jiang with email ljiang@advaluephotonics.com sent an email to **SUBJECT ACCOUNT 2** with the note "Don't worry. It's me." The email chain included an alert received from no-reply@dropbox.com with a sign-in alert stating "A new web browser just signed into to your Dropbox account." This email indicates that multiple employes have access to and use **SUBJECT ACCOUNT 2.**

100.    On August 14, 2023, **SUBJECT ACCOUNT 1** received an email from no-reply@dropbox.com stating that changes were made to shared folders. The shared folder was titled "MS Group Sharing Folder". A document titled "Operation procedure for fine-adjusting…0220321.pdf" was added by Sales on August, 8, 2023.

101.    On June 26, 2024, **SUBJECT ACCOUNT 1** received an email from no-reply@dropbox.com with a link. The link stated "Peter Dragic (p-dragic@illinois.edu) invited you to view the folder "For AdValue" on Dropbox." This email indicates that **SUBJECT ACCOUNT 1** uses Dropbox to receive files from outside entities including academic institutions which are known to be customers of AdValue Photonics products.

102.    Based on the emails received from Dropbox, Target Accounts used Dropbox to store and share files between individuals in the company, including JIANG. In addition, based on the email on June 26, 2024, the Target Accounts use Dropbox to receive files from outside entities, likely customers with whom AdValue Photonics conducts business. Financial records received for AdValue Photonics show the receipt of funds from multiple academic institutions indicating business relationships with many US and foreign academic organizations in addition to AdValue

Photonics business engagements through SBIR contracts with government entities like NASA. DOE and DOD.

103.    The government believes there is probable cause that JIANG and representatives of his company are engaged in fraudulent business and records of those business transactions will be found in Dropbox due to emails which demonstrate use of the file storage and transfer services provided by Dropbox.

## CONCLUSION

104.    Based on the foregoing, there is probable cause to believe JIANG and representatives of his company, including those using **SUBJECT ACCOUNT 1** and **SUBJECT ACCOUNT 2** have knowingly and continuously submitted false statements via electronic wire to the Government. JIANG's false statements were material to the Government because they had a capacity or a natural tendency to influence the determinations NASA. DOD and DOE made to award SBIR contracts to AdValue Photonics. Accordingly, there is probable cause to believe violations of 18 U.S.C. §§ 1001 (False Statements), 371 (Conspiracy to Commit an Offense Against the United States or to Defraud the United States), and 1343 (Wire Fraud) have been committed by JIANG. There is also probable cause to believe that evidence of these crimes: contraband: fruits of these crimes: and/or instrumentalities of these crimes further described in Attachment B currently exist in the Target Accounts.

Special Agent Rachel Williamsen, FBI

This affidavit has been reviewed for legal sufficiency by the following attorneys for the United States.

Reviewed:

Mack Coleman
Brian Samuels
Assistant United States Attorneys

Subscribed and sworn before me by telephone, this 24th day of April, 2025

LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

-26-

**ATTACHMENT A**
**(SUBJECT ACCOUNTS)**
*Property to be searched*

This warrant applies to information associated with:

kliu@advaluephotonics.com ("**SUBJECT ACCOUNT 1**") AND
sales@advaluephotonics.com ("**SUBJECT ACCOUNT 2**")

that is stored at premises owned, maintained, controlled, or operated by Dropbox, Inc. ("Dropbox"), a cloud storage service headquartered at 1800 Owens St., Ste 200, San Francisco, CA 94158 (hereinafter the "Service Provider").

## ATTACHMENT B
### *Particular Things to be Seized*

**I.    Information to be disclosed by Dropbox, Inc. ("Dropbox")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Dropbox regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Dropbox, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Dropbox is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.  All business records and subscriber information, in any form kept, pertaining to the Account, including:

1.  Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.  All usernames (past and current) and the date and time each username was active, all associated accounts (including a list of linked accounts based upon IP address and session cookie), and all records or other information about connections with Dropbox, third-party websites, and mobile apps (whether active, expired, or removed);

3.  All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

4.  Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

5.  Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

6.  All advertising information, including advertising IDs, ad activity, and ad topic preferences;

7.  Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from **January 1, 2020**, to **present**;

8.  Privacy and account settings, including change history; and

9.  Communications between Dropbox and any person regarding the account, including contacts with support services and records of actions taken;

2

B. From **January 1, 2020**, to **present**, all content (whether created, uploaded, or shared by or with the Account), records, and other information relating to:

1. Communications sent from or received by the Account, including but not limited to:
   i. The content of all files and any other communications sent from or received by the Account and all associated multimedia and metadata, including deleted and draft content if available;
   ii. All records and other information about other messages sent from or received by the Account, including dates and times, methods, sources and destinations (including usernames and account information), and status; and

   iii. All associated logs and metadata;

2. All records of searches performed by the account; and

3. All location information, including location history, login activity, information geotags, and related metadata.

Dropbox Inc. is hereby ordered to disclose the above information to the government within 14 days of the issuance of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of the Subject Offenses – *i.e.* 18 U.S.C. § 1001 (False Statements) and 18 U.S.C. § 1343 (Wire Fraud), and 18 U.S.C. § 371 (Conspiracy to Defraud and Commit Offenses Against the United States), including attempting or conspiring to commit the same or aiding and abetting the commission thereof (collectively the "SUBJECT OFFENSES") – including for the SUBJECT ACCOUNTS, information pertaining to the following matters:

A.  All records or other information relating to Shibin JIANG's alleged scheme to defraud the Government through the concealment of affiliations and activities with foreign entities;

B.  Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

C.  Evidence indicating the account owner's state of mind as it relates to the crime under investigation;

D.  The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

E.  The identity of the person(s) who communicated with the user ID about matters relating to Shibin JIANG's alleged scheme to defraud the Government through the concealment of affiliations and activities with foreign entities, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the Executing Agency and partner agencies may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

4